***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award of the Deputy Commissioner. The Full Commissioner AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with some modifications and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before Deputy Commissioner Dollar as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage was $145.80, which yields a compensation rate of $97.20 per week.
5. The issues for determination by the Commission are whether plaintiff sustained an injury by accident arising out of and in the course of his employment, and if so, to what benefits may he be entitled under the Act?
6. The parties stipulated the following documentary evidence at the hearing before the Deputy Commissioner:
a. I.C. Forms 33R, 33, 18, 22, and 19, in addition to other items contained in the Commission file,
b. Plaintiff's personnel file, thirty-one pages,
c. Medical Records, eighty-two pages,
d. Supplemental personnel records, seven pages, and
e. Denial letter and Form 19.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Dollar, plaintiff was a twenty-nine year old college graduate. At the time of the injury giving rise to this claim, he was employed as a recreation assistant with defendant's City Parks and Recreation Department, where his duties included planning and implementing recreational activities for senior citizen programs, summer camp, youth basketball league and community trips. Rodney Harrison was plaintiff's supervisor.
2. Between 1999 and 2002, plaintiff attended Livingstone College on a basketball scholarship. He had no prior left knee injuries.
3. On 5 April 2002, Steve Clark, City Recreation Coordinator, emailed plaintiff and nine other employees to ask them to play in the annual community basketball game on 8 April 2002 between city employees and the community coaches. Plaintiff confirmed he would play in the game.
4. During the week of 8 April 2002, plaintiff was scheduled to work at the Miller Center from 6:30 p.m. through 8:00 p.m., supervising line-dancing classes.
5. The community basketball game was scheduled for 7:00 p.m. to 8:30 p.m. on 8 April 2002.
6. From 7:00 p.m. to 8:00 p.m., plaintiff was being paid to supervise line dancing, even though he was playing in the basketball game.
7. Plaintiff's supervisors were well aware he was assigned to work at Miller Center while he was playing in the basketball game. Other salaried employees were paid during the time they were playing in the game. While defendant contends attendance was voluntary, plaintiff felt he was expected to play.
8. During the fourth quarter of the basketball game, as plaintiff attempted to move along the baseline, he was pushed from behind. As a result of the push, plaintiff's left knee popped and he fell. A foul was called, but he was unable to stand to take the free-throw shots.
9. Plaintiff was taken to Rowan Regional Medical Center where he was evaluated, given a knee immobilizer and referred to orthopedist Dr. Ferrero for follow-up. Plaintiff reported he was injured while cutting to the right and his left knee went left, after which he heard a pop and was unable to bear weight on his left leg.
10. On 9 April 2002, Dr. Greg Ferrero noted plaintiff had a positive Lachman's sign and left knee pain. An MRI showed disruption of the anterior cruciate ligament and the lateral collateral ligament in the left knee.
11. Rodney Harrison prepared an Accident Report on 9 April 2002 on which he noted plaintiff was injured while playing in the staff versus coaches basketball game.
12. On 10 April 2002, Kim Treece, assistant city risk manager, interviewed plaintiff to complete the I.C. Form 19. She noted plaintiff was injured in the basketball game after he proceeded to plant his left foot to go baseline to the right and the left knee popped and gave out.
13. On 15 April 2002, Supervisor Kenny Roberts gave Rodney Harrison an oral warning for allowing plaintiff to play in the basketball game while being paid to work.
14. Although the basketball game was not mandatory, employees were encouraged to participate. Plaintiff gave notice to his employer of his injury by filing an I.C. Form 18, dated 26 April 2002, on which he indicated he sustained a left knee injury while playing basketball when he got fouled by another player, causing him to lose his balance.
15. On 19 April 2002, City Risk Manager Richard Kelly sent a letter denying plaintiff's claim, as it did not arise out of the employment and was not an injury by accident. The City paid for the emergency room visit and the 9 April 2002 evaluation by Dr. Ferrero.
16. On 21 June 2002, Dr. Ferrero performed left knee arthroscopy with reconstruction with a bone patellar tendon allograft, lateral collateral ligament reconstruction with a semi-tendinosis allograft, and repair and reconstruction of the posterolateral corner of the knee. Plaintiff was referred to Stewart Therapy for rehabilitation. During the course of therapy, plaintiff was motivated to rehabilitate himself. However, he could not afford to remain in North Carolina and so he did not undergo therapy with Stewart, but instead returned to his family in Maryland.
17. Plaintiff completed summer school courses at Prince George Community College to obtain his degree after returning home. He subsequently began working at a child development center. However, there was no specific testimony regarding the date he began working or the wages earned in this employment.
18. Plaintiff did not seek medical treatment after leaving North Carolina, as he could not afford medical treatment.
19. The Full Commission finds the competent medical evidence in the record supports a finding plaintiff injured his knee in the basketball game was caused after being hit from behind after he planted his left knee, which caused him to twist his knee, damaging the ligaments.
20. On 26 June 2003, Dr. Stephen Shaffer of Southeastern Orthopedic Evaluation Center in Charlotte, North Carolina conducted an independent medical evaluation of plaintiff. Dr. Shaffer noted as history of the injury that plaintiff planted his left foot and was struck by an opposing player on the lateral side of the knee, producing valgus forces to the knee. Plaintiff continued to have complaints of instability with a feeling of weakness, swelling on exercise, problems climbing steps, decreased range of motion and stiffness with prolonged sitting or standing.
21. Based upon the evaluation, Dr. Shaffer rated and the Full Commission finds as fact, plaintiff retains a twelve percent permanent impairment to his left leg as a result of the 8 April 2002 injury.
22. Defendant benefited from the basketball game due to the goodwill created in the community by the game.
23. Plaintiff may require future medical treatment as a result of the 8 April 2002 left knee injury.
 ***********
Based upon the foregoing findings of fact and stipulations of law, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on 8 April 2002, when he was fouled during the community basketball game. N.C. Gen. Stat. § 97-2(6).
2. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $97.20 per week for the period from 9 April 2002 until he returned to work at the same or greater wages. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to permanent partial disability compensation at the rate of $97.20 per week for twenty-four weeks as a result of the twelve percent rating to the left leg. N.C. Gen. Stat. § 97-31(15).
4. Plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $97.20 per week for the period from 9 April 2002 until he returned to work. Said compensation has accrued and shall be paid in a lump sum.
2. Subject to a reasonable attorney's fee herein approved, defendant shall pay permanent partial disability compensation at the rate of $97.20 per week for twenty-four weeks.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraphs 1 and 2 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
4. Defendant shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Defendant shall pay the costs, including the expert witness fees of $380.00 to Dr. Greg A. Ferrero.
This the ___ day of June 2004.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CS/kjd